Our last case is number 17-13841, Local Access, LLC, et al. versus Peerless Network. Before we start, I was notified yesterday by the clerk's office in Atlanta that one or both of the parties had indicated that there might be confidential material discussed at the argument and that I guess you wanted the court to take some action with regards to that. I'll tell you that my general feeling is that I am not going to close a public courtroom in a case like this over a fight concerning a potential settlement agreement. We've all read the terms of the emails exchanged between the parties. I think that you can refer to those by bullet points and tell us what you think they meant or didn't mean. Without disclosing any confidential materials, it might be prejudicial to the parties. But I just don't think it's an appropriate circumstance for me to close a courtroom to the public and have a sealed courtroom. So with that, we are ready to begin. So Mr. Kelly, yes, your honor. Good morning, your honors. My name is Henry Kelly. May it please the court, counsel. Before I do start my presentment, your honors, I think it was my office that reached out to the court's office and just indicated that there would be some confidential information discussed and we weren't sure how to handle that. It's up to you. Well, I mean, we don't, we're not asking for this. We don't decide what to try to place in the record as confidential. That's for you and your colleagues on the other side to decide. But having decided to do that, it's not a necessary consequence that we close a courtroom to the public. So you can proceed. We've read all, there's a limited record in this case about what you're fighting about. We've read it. We know what the bullet points say. I think you can refer to bullet points. Some of them, I can't see how in the world they are confidential. I understand why you blocked them all out. But some of them, I just, the fact that you're going to do certain things, that's not confidential in any way. It's not proprietary in any way. So you can follow up with your argument and Mr. Myers can do the same on his part as you see fit. We're not putting any limits on you. It did make it very hard to read the brief, though. Yeah, we apologize for that, Your Honors. So with that said, you're on. Thank you, Your Honors. Give him his whole time, please. May it please the court. First, the district court below committed clear error in finding that the email exchanges among the parties of the nine bullet point term sheet was an enforceable settlement agreement, even though it is acknowledged on the face of the agreements, the emails, that the term, I'm sorry, the face of the term sheets, that there were material terms and conditions to which the parties had not reached actual agreement. The fact that four out of the nine bullet points are still, are now subject to various claims and litigation in three pending court cases, I think we think is evidence of that. Well, let's start with this. The parties, and I don't know if it was you or the other side, but somebody told the court that there was a settlement. Isn't that square one? Both parties had agreed before there was final agreement on the terms. We're gonna get to that in a second. But both parties told the court, told the district court on the eve of trial, we have settled, right? Notice that was, yes, the notice that was filed said the parties have reached a settlement and that parties would take action to finalize the settlement agreement. That is, that I'm suggesting only that that begins down the road towards the district court's finding, because if the parties have told the court we have settled, that means something. It's not an abstract aspirational thing. It's like we've come to an agreement. Doesn't that provide some sort of color for everything that follows? I think it does, but I think there's more color to it than just that, and I think that's really where the court erred below. The court did find, based on the email exchanges, that there was an email exchange late at night on a Friday before trial was to begin on Monday. The parties exchanged emails beginning around 4.57 p.m. There's a local rule to explain the notice. There's a local rule that says that if the parties don't file something within 24 hours before the, I'm sorry, within the one business day before the trial, that court costs may be assessed against the parties. And there was some effort to try and figure out how to give the courts an advance notice that trial wouldn't be proceeding on Monday before the court went away on the weekend on Friday. So I think there was some effort on the parties to try to just provide the notice to the court prior to the jury being called on Monday morning. Let's go through the bullet points. We'll call them by number, okay? So bullet point one, is there anything left to do except sign a piece of paper that says what bullet point one says? Well, there's actually quite a bit of dispute between the parties about bullet point one. You as a general question, what bullet point one says? How can that be anything more than a piece of paper that says we are doing what bullet point one says? Well, if you look at the- Even if there's already an existing agreement. If you look at the exchanges of the emails between the parties, there was a dispute about how to phrase the extension. There was a homing tandem agreement and then there was a first amendment that was also, which is sort of a side agreement between the parties. That first amendment was the subject of a third lawsuit between the parties. It was pending at the time. And there was a dispute between the parties on whether the first amendment gets extended in addition to the rights and obligations under the homing tandem agreement itself. Why would everybody have agreed to phrase it this way if everybody knew that that was all in play? Because the parties didn't contemplate that this was in fact going to be the actual settlement, that the parties would abide by the terms of this term sheet. Which means that bullet point one was gonna be different than it really was. Bullet point one was an incomplete documentation of what the parties were intending. And bullet point one cannot be read by the parties to be a complete understanding of what the intentions were with the parties. Do we care what the intentions were as much as what they said? Yes, your honors. The real purpose of trying to find whether there was a contract or not is what are the intentions of the parties? And the parties, the courts can look to different things to determine that. The court can look at, and the court here below looked only at the email exchanges, but didn't look at the full terms of the term sheet. Things like there's a statement in the term sheet that the parties will, the plaintiffs, and so the appellees would take a first run of the settlement agreement. Now that first run means that there's going to be a various exchange of the settlement terms. So the court ultimately found that this term sheet, these bullet points, were the operative agreement that the parties were to abide by and live with. But if you look at each of the different terms, including that very first one, it's not clear on the face of that document what the party's intentions were with the extending the five years. Certainly Peerless was taking the position in the case three, the one that was pending at the time that didn't get settled by this supposed agreement, that the First Amendment was no longer in effect. And because of the face of the terms of that First Amendment, Peerless would not have agreed to extend the First Amendment as part of settling a different case where it was taking a completely different position in another case that was pending between the parties. Was the amendment in place at the time that this bullet point was created? It was Peerless' position that the amendment was not in place at the time. Has there been any judicial declaration of invalidity? No, there had not. It's covered. I think Peerless would disagree with that. The parties had never had a discussion about whether. You can disagree, but that's not what you put in there. That's not what you agreed to. But again, Your Honors, that's why the court has to look at other things other than just by looking at the email exchanges between the parties. You've gotta look at the full extent of the parties. Remember, the parties were involved in three lawsuits at the time, or there had been involved in three lawsuits, one appeal to this court, which we argued back in February, over very vague and ambiguous terms of contracts that none of the counsel in this case were involved in. The parties weren't going to buy into other lawsuits by simply agreeing that these nine bullet points on their face would be the enforceable agreement to resolve that case. Since this case has been, or since this case was, since the court's order on August 10th, the case three, the one that's pending below before Judge Byron now, has gone from two counts brought by the plaintiff to an excess of 10 counts worth of litigation, in part because of these claims. There's been two contempt motions because the terms of this settlement, these exchange of emails, were vague and ambiguous, and the parties didn't understand what their duties and obligations were to comply. There's been a motion filed for clarification to this court because the court had issued a limited stay to preclude the parties from having to execute releases. The court granted peerless's request in that regard. There was a motion for clarification, not because this court's order on the limited stay was vague or ambiguous, but because the underlying terms of the settlement is vague and ambiguous. There's two clauses. Because the parties, given their litigation history, disagree about everything and make an end of the world argument about everything. That's why. I don't think this stuff is very clear. Okay, bullet point number six. There's nothing existential about that, right? No. You're gonna dismiss the case with prejudice like what happens with most settlements? Yes. Okay. Same thing with number five. And same thing with number seven. You're gonna execute that sort of a document. That sort of a document is typical. You would think so, Your Honor, but there's been actually significant disagreement about number seven. In fact, the parties have had, there's only, arising from this bullet point term sheet, there's been only, and I've got to disclose or talk a little bit about what that is. There, it requires the parties to execute an NDA when there's been two documents that have been signed by each party. Peerless has signed its version of an NDA. Local Access has filed its version of an NDA. They don't match, and the parties are in disagreement. What a surprise. But, so Local Access made a motion before Judge Byron, it was referred to Magistrate Smith, to hold Peerless in contempt because Peerless did not sign the Local Access version of the NDA. Now, the Peerless version of the NDA included terms such as bankers and lenders and potential investors that could have access to the NDA. Local Access objects to that. And the court ultimately- The reply email that said, you were going to have some exclusions, and you put those exclusions in capital letters. And Local Access has never agreed to those exclusions. You're probably right, and they're probably wrong, and if they're wrong, they're the ones who are gonna be on the hook for money and not you. But the problem is that- You're gonna fight about every single thing in this case. You're gonna continue. It's been your history. It's part of your nature. It's not gonna end, given the nature of this industry. And that's why the court should not have summarily enforced this term sheet as the agreement. You also say that you wanted the district court to hold an evidentiary hearing, but you didn't ask for a Local Access action. No, Peerless had asked for an evidentiary hearing in the motion for clarification. There was a separate motion for clarification. No, actually, Peerless filed its motion for clarification prior to Local Access filing its motion to enforce. About five days before. So Peerless, realizing that the parties had- You know what docket entry that is where you ask for an evidentiary hearing? If you don't have it now, you can let me know when you get back up on the rebuttal. I will, I will, Your Honor. So Peerless did ask for an evidentiary hearing because it believed that the terms of the email exchanges were vague and ambiguous. And it's Peerless' position, and the case law bears this out, that the courts cannot summarily enforce, first of all, we believe that because of the vague and ambiguous nature of the term sheet, that the court could not find that this term sheet alone is the operative agreement that the parties are bound by. Just on its face, the fact that the parties will take, run some settlement agreements, the fact that the non-disclosure provision talks about et cetera, bankers, lenders, et cetera, was clearly an indication that there's some digital negotiations gonna happen. Apparently, I mean, et cetera could mean other kinds of groups that are in the same category as bankers and lenders. In other words, you know, people who are in a position to lend money and need to see the information in order to be able to do so. We agree with that. But the place of local access and- The word et cetera does not make it ambiguous, is what I'm trying to say. Well, local, but the parties believed that they had not finalized the terms on that. And that's proven out by even local access' reply brief here where they still take the position in their reply brief that the non-disclosure agreement should not, but in terms of the settlement, the non-disclosure clause of this term sheet required or prohibited all outsiders from having to review the terms of the term sheet. Now, we disagree with that, but we, it's clear that, and they took the position that night when the parties said, did this email exchange. They proposed a settlement agreement that didn't include bankers and lenders and only included non-outsiders. Now, PIROS disagreed with that and PIROS proposed terms that were different than that. The very next day on April 1st, it's clear from the actions of the party, and this is where the court, again, made a clear error, did not take into full consideration what the party's actions were to demonstrate the party's intent. Because that's ultimately what you're trying to force a contract. What is the party's intent? And courts will not enforce settlement agreements in various circumstances where it's clear from the face of the agreement and from the party's actions subsequent to the actual email exchanges that there is, that the settlement agreement, the agreement was contingent upon further actions by the parties. The Williams versus Ingram case, the settlement agreement must be sufficiently specific and mutually agreeable in every essential element for there to be an enforceable agreement. The releases in- What you're asking us to do is look at parole evidence to determine latent ambiguity, right? No, Your Honor. No, Your Honor. You're saying that if you look under the surface of these bullet points, you'll know that they weren't definite enough because we have all these underlying problems and all these underlying things. And what one word seems to mean isn't really what it means when you dig under the surface. For example, bullet point number one, there may not just be one agreement. There may be an amendment to an agreement and we don't know which one is in play and which one. That's what you're asking, right? We're not asking the court to look at parole evidence. We're asking the court to understand that the terms of the agreement, the email exchanges that the court found to be the agreement, that this is what the parties are bound to, that they're vague and ambiguous. And the court can look to actions both before and after the exchange of those emails to understand what the intent of the parties were. Was it the intent of the party that this would be the operative agreement, that these email exchanges would be the terms by which the parties would be exclusively bound? And it's clear that it's not. The parties did not intend this to be the term, both on the face of the emails, where they say that the plaintiffs will take a first run at the agreement, the et cetera. There was additional negotiations and it's clear from the plaintiff's own actions, the appellee's own actions, that they also understood as of that night, March 31st, when they sent out the proposal, that there were additional terms and conditions that needed to be fulfilled before the parties could reach a final agreement. Thank you. Well, if you have questions, I'll be happy to answer. No, no, you've saved all your time for rebuttal. Thank you. Thank you very much. Ernest Myers. May it please the court. My name is Ernest Myers. I'm here with Lee Marcus, who represented the Appellee's Blitz Telecom Consulting LLC and Local Access LLC. The crux of this case has to do with one simple word, and that word is agreed. When you're talking about a settlement of a case, what the court has to do is apply contract law. When we're applying contract law, contracts require mutual assent, and as the court is very well aware, mutual assent, while people talk about it in terms of a meeting of the minds, it really is not. It is a meeting of the signs. It is a meeting of the objective words and phrases that the parties have exchanged. Now, in a lot of these cases on- You're right about that, but Mr. Kelly is also right in theory that the bullet points, the basic terms of the sheet have to be definite enough to enforce, right? Because if you and I settle the case and the bullet point said, we agree to enter into a distribution agreement in the future, that would not be definite enough to enforce, right? Because heaven knows what that distribution agreement would look like. Absolutely, the points have to be definite enough. In this case, they were definite enough. But if there was anything in the bullet points that said this settlement is contingent upon us entering into another agreement, or this settlement is not done until we do something, that would be a very different story than what actually happened in this case. The parties spoke on the telephone all throughout the day on Friday, if the record reflects that, and at around four o'clock or 4.30, they had come to an agreement. That agreement was purely verbal based on discussions. And what happens at that point was there was a suggestion made that a notice of settlement be filed. And counsel for the appellant had said, no, we're not gonna file a notice of settlement until we actually memorialize what we have talked about, what our settlement is in writing, at which point there was this exchange of emails where counsel for the appellees sent over an email with seven bullet points. Counsel for the appellant sent back a couple of modifications to two of them and added a couple of more bullet points. There was then an agreement on everything with the exception of the very last item, just because there was a clarification as to who was paying for the jury costs. And the question was, okay, is this it? Are we agreed? And the response comes back clearly and unequivocally, agreed. At that point, it was after that, that the notice of settlement gets filed. It wasn't filed before that, because there was this discussion around 430 that says we're not filing the notice of settlement until we have agreed on these terms in writing. And while it may have been approved a little bit earlier, the court can take judicial notice of the docket, which will indicate that that notice of settlement was not filed until after the last email. And at that point in time, if the appellants thought that there wasn't a settlement, that we weren't done, that there was something more to do, where's the objection? Where is telling the court, wait a minute, they filed this notice of settlement, but we're not settled, there's more to do? There was none of that. There never has been any more of that. And so what happens is, after the settlement is completed, the parties do what parties generally do following this. This was a settlement, it was done, it was negotiated. The parties were involved in talking to their lawyers, but there were some emails that go back and forth from the lawyers. So what happens after that? The parties were looking to memorialize the settlement with a document that's gonna be signed by the parties. That doesn't say that we're not done with a settlement. That says that we're going to do a memorialization document. There were terms that would need to be set forth with regard to implementation. When's the payment gonna be made, who's it gonna be made to, those kinds of things. That doesn't change the fact that there was a settlement put in place. The argument the appellants are making is, well, after March 31, there was some discussion about other things that could have been added to the document, and whether language could be put in there that would change the material terms of the nine bullet points. And what the record reflects is, when that started to happen, counsel for the appellees came back and said, no, no, no, we have a settlement. We are going to go right by the settlement. And ultimately, the documents that were sent over were mirror images of the email. Well, Mr. Kelly says that at least in part, and this may not be indicative of everything, but he says that with regard to the NDA, that the NDA that Local Access has proposed doesn't include the sort of professionals that are listed in the correction, or the addition, or the edit, to the initial bullet point. That's not correct, Your Honor. The record reflects in one of the exhibits, document 348, and I don't recall the letter, and I apologize for it, but in one of the exhibits there was an NDA, which specifically then says bankers and accountants, because that is what Mr. Kelly put in the email, in all caps, said bankers and accountants. The problem is with the et cetera? Perhaps, perhaps, yeah. They're not putting anybody else and they want more people. And they want more people, and I agree with what Judge Rosenbaum indicated with regard to et cetera. It is not an ambiguous term. It is a term that is commonly used to discuss people of the like type and kind. Bankers, accountants, people of that sort. It's not bankers and accountants and circus clowns. I don't know if it would be economists. Lawyers, I think, had to be put in there because the lawyers were aware of the terms of the settlement. They were integral in it. I think in every nondisclosure agreement, at least that I have seen or been a part of, if the parties have this nondisclosure obligation, their attorneys do as well. Investors? Well, investors is a different question. No one talked about investors. I'm asking you whether that's covered by et cetera. I don't know that it's covered by et cetera because it's not of the same type. Bankers and accountants have to do with. Part of his argument is that there's a dispute about what et cetera means. It is part of the argument, but it is not an issue which has to do with was this term there enforceable. In other words, if the contract gets entered into, if the NDA is entered into and it says bankers, accountants, et cetera, and at some point there is a question as to does it include economists? Does it include potential investors? And one side says yes and one side says no. At that point in time, there's an actual case or controversy under Article III and someone can either file a deck action, seek some sort of judicial ruling on it, or if the disclosure is made, seek relief from it and say, wait a minute, you weren't allowed to do it. But that doesn't say that there wasn't actually an agreement to enter into a nondisclosure. All we're gonna do in practical terms as we affirm is create more filing speed for the district court because you guys are gonna be filing suit left and right. Your Honor. Every single term. As a, Hopefully you'll consolidate them all into one, but only one district judge will have to deal with it. Oh. My second in the last five months. It is, Your Honor, and fortunately it is all before one district judge, but not to make light of the situation, as the court has recognized, the parties in these cases have had disputes, mostly arising out of the appellant's positions they are taking, which were pointed out in the brief, that every time there is something put in writing, their position is, let's say ambiguous, we don't know what it means. We have no idea what it means and so therefore we need to have a court intervention of it. Whether or not this goes back with regards to what does et cetera mean, whether it does or whether it doesn't, they're gonna continually take the position that no matter what language is in there, they don't know what it means and it's ambiguous. Let me make sure you understand what all this means in practical terms because you said that if there are legitimate disputes about, for example, the form that the NDA is supposed to take, that creates a live case or controversy under Article III and someone can file suit, right? No, that's not what I said, Your Honor. What did you say? What I said was that if there is an NDA which says bankers, accountants, et cetera, which is exactly what the bullet point said and exactly what appellants agreed to, that if they have some question as to the scope of that or what it is that that means, then that may give rise and it may not give rise to some sort of a problem in the future. That's a hypothetical problem. The courts have said that. It's not hypothetical. This is gonna happen. It's gonna happen. As it will rain in South Florida in the summer, this is gonna happen. The only question is how and when. But here's what I wanna make sure that both of you understand because if the district court is enforcing the settlement agreement, any further disputes are not going to be run-of-the-mill deck actions. They're gonna be motions for what? Oh, there could be contempt motions. That's exactly right. Contempt for both of you. And so if you're wrong on the NDA and he's wrong on which agreement gets modified, contempt for you, contempt for him. You guys wanna go down that road? Your Honor, I don't think that any of the parties want to go down the road that they have gone down. They're willing to do it. But they have in the past expressed the willingness to do it and don't necessarily seem to avoid it. More power to all of you. And may God be with you. Well, Your Honor, I understand that. The problem here, though, is that the parties were trying to resolve a very contentious piece of litigation. They spent a lot of hard work trying to get it resolved. They did get it resolved. The appellants agreed that it was resolved. And yet here we are arguing over whether or not it was resolved. Usually in cases where there is motions to enforce settlement, the court is forced with looking at one letter from one lawyer and one letter with another lawyer's and they're not the same. Was there actually some sort of an agreement here? That isn't what we have here. Here we actually have one list of bullet-pointed terms and both sides saying, yes, this is what we agree to. And they are unambiguous terms. And they can be enforced in the court, in fact, when it looked at the emails and it looked at what the history of the parties were. Because as you indicated, this judge is well aware of what's been going on between these parties. He took a look at it and said, objectively, there is an agreement here. And it was clear to the judge that the terms were sufficiently definite and clear and the judge rejected any kind of argument that Peerless had, after the fact, gone back and said, oh, wait a minute, we're not entirely sure of the scope of what it is that we agreed to. And the issue of an ambiguity or an alleged ambiguity with regard to the scope does not affect whether or not an agreement was put into place. If that was the case, then there are never any kind of a breach of contract case that has ever been brought in any court where the parties are arguing over the meaning of a term. One side would say, well, wait a minute, this contract should be voided ab initio. It should be, we should have complete rescission because there was never any kind of an agreement. And that is not what the state of the law is and that is not what actually happens. In this case, this contract, this settlement agreement was entered into. It was agreed by both sides. There was no equivocation on that. And at the end of the day, the district court, when it took a look at it, not only on the motion that was filed, but also on a subsequent motion that it treated as a motion for rehearing, rejected the contention that anyone should go back and look into what Peerless was thinking. It mattered what Peerless was saying. And the court, I believe Judge Jordan, you had asked a question earlier if Peerless had ever asked for an evidentiary hearing before and Mr. Kelly made reference to, I believe, a document which is at 338 in the record, their motion to reopen the case or dismiss it. And there is no request. He referred to a motion for clarification. He did, but I believe he misspoke as he was talking about a motion filed five days before the motion to enforce settlement. And that was document 338, the motion to reopen or dismiss. And that case does not ask for an evidentiary hearing. So that is not in there. There may have been a request in the motion for clarification, but that would have been later, as Your Honor had pointed out. Beyond that, Your Honor, I don't believe that the cases have been cited by Peerless with regards to the issues of whether or not a settlement was entered into or a posit in this case. A lot of those cases talk about lawyers not having authority. They talk about the parties specifically stating that different things had to be done before the settlement would be effective. And none of that happened in this case. This case was settled. And we have now been fighting over this settlement of this case for the better part of a year and a half. And Local Access and Blitz are in a position where they have not been able to go ahead and move forward with things as a result of the fact that this case should have been settled. There was gonna be a jury trial that happened on Monday that parties were gonna argue about all kinds of things, and none of that was able to happen. So, based on the record that is in front of the court, may I please respect the request of the order of the district court to enforce the settlement be affirmed, and would just ask if the court would entertain, if it is appropriate, a motion that the audio recording of the oral argument be placed under seal, and if so, if the court would not post it online and give the parties 48 hours to file such a motion. What if we discussed it as confidential? I'm sorry, Your Honor? What if we discussed it as confidential? Everybody's been very clear. The only things that have been discussed explicitly are non-disclosure agreements. That's really it. Nobody has mentioned the other terms by subject or by context. If something were to come up in the rebuttal, then we would make that request. If it doesn't, then I would agree with Your Honor. Thank you very much. Thank you. First of all, to respond to a couple of points that Mr. Myers made, the nine bullet points that were in an email is not really the product of a lot of hard work by the parties. It was something that was thrown together by the party at the very last minute, not to point out that that should be dispositive of the issue, but I think it's just to point out that it's not the product of hard work. It's not a complete document. It's not a complete agreement, and it says so on the face of it. Secondly, with respect to the NDA, this is kind of, well, let me talk about the release first. There was a release. I don't think that's confidential that the parties release each other or propose to in the email exchanges. There are two sections of the release, bullet point two and bullet point eight. There's significant dispute about what those provisions, what they cover. PIROS takes the position that the dispute, or I'm sorry, the release in section eight or bullet point eight related to those claims that were actually pleaded in existing claims. Local Access has taken the position that what the parties intended with bullet point eight was that it not only include those actually pleaded, but also all claims that would relate to those claims. The release of language that the plaintiffs, or that Local Access and Blitz, the plaintiffs have proposed, are much more expansive than what PIROS believes are covered by the bullet point eight, and even if you include a bullet point two. The ones that you agree are definite enough, although that doesn't answer the overall question, but the ones that you agree are definite enough are five, six, and nine, right? Yes. Right, those there aren't any issues with. Those are not any issues, no issues with those bullet points. Then the NDA, I think this is dispositive of the issue that there really was no agreement, no meeting of the minds, no intent by the parties to be bound specifically by those bullet points. First of all, to refute what Mr. Myers may have said, they say in their pleading at page 32 of their reply brief that the nondisclosure agreement that they have proposed did not alter the material terms of the settlement which prohibit disclosure to outsiders. So again, I think Mr. Myers and Local Access claim that PIROS is being unreasonable in its construction of some of the terms, but clearly the face of the nondisclosure term sheet would permit disclosure to certain people outside. There is disagreement about who that is. Most importantly though is that when Mr. Myers talks about supplemental proceedings, Judge Rosenbaum, I think you mentioned contempt, they filed three motions to contempt against PIROS below because PIROS didn't comply with the terms of the term sheet and on one of them, the most recent one, the court with respect to the NDA found that PIROS had not violated a clear and unambiguous order notwithstanding the fact that there are two different signed agreements. Neither party has signed the other person's agreement because there is significant and essential material disagreement about what the terms of the term sheet provide. Thank you. Thank you both very much. We are in recess until tomorrow. Thank you.